1  ALEX G. TSE (CABN 152348)
   United States Attorney
2
   BARBARA J. VALLIERE (DCBN 439353)
3  Chief, Criminal Division

4  SCOTT D. JOINER (CABN 223313)
   Assistant United States Attorney
5
       450 Golden Gate Avenue, Box 36055
6      San Francisco, California 94102-3495
       Telephone: (415) 436-7200
7      FAX: (415) 436-7234
       Scott.Joiner@usdoj.gov
8
   Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 18-MJ-71724 SK |
| Plaintiff, | **UNITED STATES' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRETRIAL DETENION** |
| v. | |
| BRANDON FRERE, | Date: December 10, 2018<br>Time: 9:30 AM |
| Defendant. | Court: Hon. Sallie Kim |

## INTRODUCTION

Given the complex circumstances surrounding the charges and the defendant's risk of flight, the government submits the following memorandum to summarize key facts in support of its motion for pretrial detention. Additional facts and evidence will be proffered at the detention hearing.

The FBI arrested Defendant Brandon Frere last Wednesday night at San Francisco International Airport (SFO) as he attempted to leave the country on a flight to Cancun, Mexico. Frere is the founder, majority owner, and Chief Executive Officer of three companies that he is charged with using to defraud thousands of individuals who were seeking debt relief from their student loans: American Financial Benefits Center ("AFBC"), Ameritech Financial ("Ameritech"), and Financial Education Benefits Center ("FEBC") (collectively "the Companies"). *See* Bognanno Affidavit in Support of Complaint,

ECF No. 1 ("Bognanno Aff.") ¶¶ 8-9.  He was arrested with thousands of dollars in cash, blank company checks, and other items highlighting his intent to flee.  The defendant made his initial appearance before the Court on December 6, 2018 and his detention hearing was scheduled for Monday, December 10, 2018.  As set forth below, and in the Bognanno Affidavit, the defendant poses a serious risk of flight and should be detained pending trial.

## BURDEN OF PROOF

The Bail Reform Act of 1984 provides procedures to detain a dangerous offender, as well as an offender who is likely to flee pending trial or appeal.  *See* 18 U.S.C §§ 3141 *et seq.*; *United States v. Salerno*, 481 U.S. 739 (1987).  Although detention based on a danger to the community requires clear and convincing evidence, the standard is different in the present case, where the issue is whether any conditions of release will reasonably assure the defendant's attendance at trial (risk of flight).  In order to prevail on detention here, the government is subject only to a "preponderance of the evidence" standard. *See, e.g.*, *United States v. Tedder*, 903 F. Supp. 344, 345 (N.D.N.Y. 1995)(citing *United States v. Martir*, 782 F.2d 1141, 1146 (2d Cir. 1986)); 18 U.S.C. § 3142(c).  Nor must the government prove both flight risk and danger to the community to warrant detention.  *See United States v. Flores*, 856 F. Supp. 1400, 1401 (E.D.Cal. 1994). In addition, the Ninth Circuit has made clear that in meeting its burden, "the government may proceed in a detention hearing by proffer or hearsay." *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986).

## BRANDON FRERE'S RISK OF FLIGHT CANNOT BE MITIGATED BY CONDITIONS OF RELEASE

The defendant poses a severe risk of flight.  After his arrest last Wednesday night, the FBI discovered that Frere was traveling with more than $3,900 in cash, five blank checks from Ameritech and FEBC business accounts, two blank checks from a personal account, one signed check from a third party made out to himself for $900, and 10 credit cards and gift cards, among other items, including his social security card.  He also had a card from Exchange Bank with account and routing information, and a piece of scrap paper that appeared to have online account login information for each of the three Companies.  According to the government's investigation, Frere had purchased his round-trip ticket to Mexico the previous Wednesday, November 28, 2018, and was traveling by himself.  The same day that

he booked his flight, Frere posted two "tweets" to his Twitter account. The first, posted at 11:15 AM reads: "Reputations are built one moment at a time but can be completely ruined in an instant. A screen shot of the tweet follows below:



The second tweet followed at 12:45 PM, and reads "Think about what you're doing today and imagine still doing it 5 years from now. Imagine still doing it 20 years from now. Imagine still doing it as far into the future as possible. Do you like what you see?"



It appears that, in light of his legal troubles, Mr. Frere did not like what he saw and decided to flee the country. As detailed in the Complaint, Frere had been syphoning millions of dollars in fraudulently obtained funds from the Companies for years. Before leaving, however, he appears to have taken hundreds of thousands of dollars more. The day after booking his flight to Mexico (and tweeting his

concerns about his reputation and future), he withdrew $400,000 from Ameritech and FEBC accounts. Forty-five minutes after making the withdrawals, United States District Judge Saundra Brown Armstrong granted the Federal Trade Commission's (FTC) Motion for Preliminary Injunction and Frere's Companies were placed into receivership.[1] In ruling that the FTC was likely to prevail on its claims of fraud and abuse, Judge Armstrong recognized that "the FTC has put forth a robust record that includes thousands of pages of consumer complaints, consumer declarations, former employee declarations, consumer call recordings, undercover call recordings, and more. That evidence tells a consistent story – one in which deceptive and abusive practices pervade." *FTC v. American Financial Benefits, et al.*, Case No. CV 18-00806-SBA ECF No. 186 at 23; *see also* Complaint, Exhibit A (CR 18-MJ-71724 SK, ECF No. 1-1). The Receiver has since filed a motion to hold Frere in civil contempt for looting the companies, noting that, "at the same time he was transferring hundreds of thousands of dollars for his benefit, Defendant Frere made no provision to pay his employees their outstanding pre-receivership wages, which for two weeks of work totaled roughly $175,000." *See* CV 18-00806-SBA, ECF No. 189 at 1.

As described in the Bognanno Affidavit, an essential part of Frere's wire fraud scheme was (and is) to enrich himself and his family members with proceeds fraudulently obtained from his victims. It is important to note that the criminal investigation to date has identified in excess of $9,000,000 wired by Frere to bank accounts in Andorra and Luxembourg between June 2015 and April 2018.[2] ECF No. 1, ¶ 31. This money remains available to facilitate the defendant's flight from prosecution. Similarly, according to Judge Armstrong's Order on the Preliminary Injunction, the evidence presented by the FTC showed that FRERE transferred over $3.164 million from the Companies' accounts to his personal account. ECF No. 1, ¶ 20. As the criminal investigation and the Receiver's recent accounting indicate,

---

[1] Since the criminal complaint was filed, the government learned that the Receiver sought to have the $400,000 returned as early as November 30, 2018. Frere refused, and on December 4, 2018 – the day before Frere boarded his flight to Mexico – the Receiver filed an ex parte motion seeking the return of the money and order to show cause why Frere should not be held in contempt for violating the Preliminary Injunction. *See* CV 18-00806 SBA (JSC), ECF No. 189. U.S. Magistrate Judge Corley issued an Order to Show Cause and for a Briefing Schedule on December 7, 2018. CV 18-00806 SBA (JSC), ECF No. 194.

[2] Some of this money (approximately $1.6 million) appears to have been transferred back to accounts in the United States, but this still leaves in excess of $7,000,000 overseas.

U.S. MEMO I/S/O DETENTION 4
CR 18-MJ-71724 SK

however, this number is actually much higher. *See* CV 18-00806 SBA (JSC), ECF No. 189 at 5. ("It appears that compensation taken by Frere and the distributions to his family members are vastly larger than the Court knew of at the time of the Order… Our initial review of the records reveals that Frere has received more than … $10.2 million from the Corporate Defendants since 2015.")

Judge Armstrong also noted that company bank records showed the dissipation of over $128,000 to airlines, hotels, resorts, casinos, cruise lines, and similar companies; over $202,000 to automotive and motorsports companies; and over $253,000 to companies that provide building, landscaping, and related supplies and services. *Id.* In evaluating these numbers, it is important to keep in mind that Judge Armstrong's Order relied on affidavits and accounting evidence that had been filed in March of 2018.[3] Frere's actions since the civil action was filed (which were not before Judge Armstrong) only serve to underscore Frere's intent to transfer his wealth overseas and avoid the consequences of his fraud.

The FTC filed its civil complaint against Frere and the Companies on February 7, 2018. Since the complaint was filed, it appears that Frere has transferred approximately $26,900,000 between various accounts, including monies re-routed between personal and business accounts for no apparent economic or business purpose. The co-mingling of funds ultimately appears to have facilitated transfers to foreign bank accounts and friends and family, among other things. Several of these transfers are highlighted below.

Notably, on the same day that FTC action was filed on February 7, 2018, Frere opened three new accounts at Redwood Credit Union (RCU): an account for Ameritech ending in 2068; an account for FEBC account ending in 2076; and a personal account ending in 2056. Those accounts appear to have played a significant role in the transfers of monies between accounts and overseas since on or after February 7, 2018.[4] Other business accounts have also been active in transferring money to Frere and his family. For example, from February 7, 2018 through April 2018, an AFBC Bank of America (BoA) account ending in 9542 transferred $900,000 to the AFBC account at RCU ending in 0966. The RCU AFBC 0966 account in turn was used to transfer or wire approximately $1,500,000 to the following

---

[3] The George Declaration (Complaint, Ex. B (ECF No. 1-2)) was signed in September 2017 but filed in March 2018.

[4] All of the amounts cited here are preliminary and subject to additional analysis and confirmation.

individuals:

- Brandon Frere $743,000 (to the personal RCU account ending in 2056, established 2/7/2018);
- Justin Frere $22,000;
- Gloria Frere $44,000.

Notable transfers from the three new RCU accounts (opened on the same day the FTC filed suit) include:

- Brandon Frere personal accounts totaling $2,400,000;
- Foreign Luxembourg Bank Account: $1,075,000;
- Justin Frere totaling $82,000;
- Gloria Frere totaling $243,900.

The April 30, 2018, wire to Luxembourg ($1,075,000) is particularly instructive with regard to Frere's intent to follow his money overseas. Prior to the wire to Luxembourg, Frere traveled to Panama – a jurisdiction that has become notorious for entities engaged in money laundering. Frere's passport indicates that he entered Panama on April 4, 2018. Two weeks later, on April 19, 2018, the FTC filed its Reply brief in support of its Motion for Preliminary Injunction. Attached to this brief were numerous recorded calls with Frere's companies, declarations from victims, complaint files from the Better Business Bureau, and – perhaps most importantly – declarations submitted under penalty of perjury from former employees that directly implicated Frere in the fraud.[5]

The same day that this evidence emerged, Frere transferred approximately $1,400,000 from company accounts to his personal accounts. The first transfer was from the RCU business account of FEBC (account ending in 2076) for $940,865. The second transfer was from the RCU business account of AFBC (account ending in 0966) for $547,075. Less than two weeks after that, on April 30, 2018, Frere wired $1,075,000 from the same personal checking account at RCU (account ending in 2056) to a foreign bank account bearing his name (Brandon Frere ATF Lancel Trust) located in Luxembourg (EFG Bank Luxembourg SA).

---

[5] Several of these declarations were summarized in the Bognanno Affidavit. *See* ECF No. 1 ¶¶ 15-18.

But Frere's scheme to take his money overseas appears to have begun long before the FTC's evidence started to overwhelm the public record. Frere's Companies (AFBC, Ameritech, and FEBC) sued the FTC for declaratory relief on August 18, 2017. CV 17-04817 SBA, ECF No. 1. The day before filing suit, however, Frere transferred $1,300,000 from his personal BoA account (ending in 7970) to an account in Andorra. The pattern of transferring large sums overseas just before significant dates in the litigation continued after the FTC filed its own lawsuit against Frere and his Companies in February 2018. For example, on June 11, 2018, Judge Armstrong informed the parties via ECF that the FTC's Motion for Preliminary Injunction and the defendants' Motion to Dismiss were ripe for resolution without oral argument, and that the previously scheduled hearing on June 13, 2018 was unnecessary. *See* CV18-00806 SBA, ECF No. 138 ("The Court finds that Motions 22 and 117 are appropriate for resolution without oral argument pursuant to L.R. 7-1(b). Therefore, the 6/13/2018 hearing is vacated. The Court will issue a written ruling."). Frere appears to have taken this as an ominous sign, because the following day, June 12, 2018, he transferred approximately $1,050,000 to his account in Luxembourg. In light of the pattern described above, these transfers are not a coincidence. The civil litigation repeatedly spurred Frere to furtively move millions of dollars overseas and, eventually, to flee himself as the evidence mounted against him in the FTC action.

The logical conclusion from the facts and timing described above is that the defendant fully intended to flee when he attempted to board his flight at SFO last Wednesday. After booking his flight to Mexico, he blatantly looted the companies the following day – the same day the Preliminary Injunction issued. He then sought to cross the border with enough resources (cash, blank checks, and account and routing information) to sustain him until he could access the millions of dollars that he had hidden in foreign accounts. Given the long-standing nature of his plan, and the overseas resources at his disposal, it is highly likely that the defendant will attempt to flee again if he is released, regardless of any conditions imposed upon him.

## CONCLUSION

For the foregoing reasons, and additional facts and arguments to be presented at the hearing, the

//

1  government respectfully requests that the Court order the defendant detained pending trial.

2

3  DATED: December 10, 2018                    Respectfully submitted,

4                                              ALEX G. TSE
5                                              United States Attorney

6
                                               _____/s/_____
7                                              SCOTT D. JOINER
                                               Assistant United States Attorney
8